IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

TRAVISE HULEY,

        Plaintiff

VS.

BILL MASSEE, SHERIFF, *et al.*,

        Defendants

NO. 5:07-CV-56 (HL)

PROCEEDINGS UNDER 42 U.S.C. §1983
BEFORE THE U. S. MAGISTRATE JUDGE

## RECOMMENDATION ON MOTIONS TO DISMISS

Plaintiff TraVise Huley brought the above-captioned action against defendants Bill Massee, Sheriff of Baldwin County, and Richard Giddens, Probation Officer, alleging that these defendants caused him to be illegally incarcerated for forty-three (43) days in violation of his constitutional rights. Tab #1. In response to these allegations, the defendants each filed a motion seeking dismissal. Tab #10 and Tab #11. With respect to these motions, plaintiff Huley was ordered to file (Tab #12) and has filed responses (Tab #13, Tab #37,Tab #38, Tab #49). The defendants have replied to these responses. Tab #14, Tab #42, Tab #50. Thereafter, the undersigned entered a recommendation to deny the defendants' motions seeking dismissal in order to allow further factual development. Tab #55. Upon review, the district judge entered an order rejecting this recommendation and instructing the undersigned to address and make written findings on each of the defenses proffered by the defendants. Tab #60. The undersigned's analysis and findings appear below.

**FACTUAL BACKGROUND**

In his complaint, plaintiff Huley claims that on January 28, 2005, he was unlawfully arrested and detained in the Baldwin County Jail. Approximately two weeks later, he was visited by defendant Giddens, a Baldwin County Probation Officer. During this meeting, defendant Giddens presented the plaintiff with a form explaining that the reason for his arrest and detention involved his failure to report to the jail as required by a special condition his probation.

After reading the document, plaintiff Huley explained to defendant Giddens that he *had* timely reported to the jail in compliance with the applicable condition of probation. He then explained that when he reported to the jail, he spoke with a deputy and explained his presence. In response, the deputy telephoned District Attorney Consino and informed him of the plaintiff's presence. At the conclusion of the phone conversation, and apparently upon the verbal direction of District Attorney Consino, the deputy told plaintiff Huley that he was free to go. Plaintiff then departed the jail. According to the plaintiff, the only response offered by defendant Giddens in response to this explanation was "get a lawyer."

In the days that followed, plaintiff alleges that he complained about his plight to everyone who would listen and even sent three letters of grievance to defendant Massee informing him of the situation. According to the plaintiff, he received no response though none of the letters were returned. In addition, he avers that he contacted and explained his situation to his previously appointed criminal defense counsel John Bradley.

Plaintiff then notes that, on three (3) separate occasions during this incarceration, he was transported to the Baldwin County Superior Court for the purpose of attending a hearing. Each time, however, the hearing was continued on account of either Bradley or Consino's absence. On March 11, 2005, plaintiff was brought to court for the fourth time. On this occasion, a hearing was actually held. During the hearing, Consino told the court that the plaintiff had, in fact, properly complied with the requirement to report to the jail and that he had instructed the deputy to tell the plaintiff that he was free to go. As a result, plaintiff Huley was adjudicated not guilty of the probation violation and was released from custody.

As a result of being incarcerated, plaintiff contends that he has become stricken with numerous maladies including uncontrollable anxiety, chronic severe depression, acute schizophrenia, and intense adjustment reaction disorder. According to the plaintiff, each of these conditions require intense treatment which he has begun at a number of facilities. Consequently, he seeks to damages to cover, *inter alia*, the costs of treatment, therapy, medications, and counseling. He also requests an unspecified award of punitive damages.

## LEGAL STANDARDS

### A. MOTION TO DISMISS

A complaint is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6), if it does not "state a claim upon which relief can be granted." When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all factual allegations in the complaint must be accepted as true, with all reasonable inferences construed in the light most favorable to the plaintiff. *Wagner v. Daewoo Heavy Industries America Corp.*, 289 F.3d 1268, 1270 (11th Cir. 2002), *vacated on other grounds*, 298 F.3d 1228 (11th Cir. 2002); *See also*, *Beck v. Deloitte & Touche*, 144 F. 3d 732, 735 (11th Cir. 1988). Conclusory allegations and unwarranted deductions of fact, however, are not admitted as true. *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005).

Moreover, "[a] complaint is subject to dismissal under Rule 12(b)(6) when its allegations – on their face – show that an affirmative defense bars recovery on the claim." *Marsh v. Butler County, Alabama*, 268 F. 3d 1014, 1022 (11th Cir. 2001) (*en banc*) (citing *Quiller v. Barclays American/Credit, Inc.*, 727 F. 2d 1067, 1069 (11th Cir. 1984) *vacated on petition for rehearing*, *reinstated by* 764 F. 2d 1400 (11th Cir. 1985)).

### B. ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. *Lassiter v. Alabama A & M University*, 3 F.3d 1482, 1485 (11th Cir. 1993). Congress has not abrogated Eleventh Amendment immunity in §1983 cases. *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990). Thus, if the state involved has not waived its immunity, the Eleventh Amendment bars a §1983 suit against that state. *Cross v. State of Ala.*, 49 F.3d 1490 (11th Cir.1995). §1983 suits against that state's government departments would be similarly barred, as well. *Id.* at 1503. Whether an entity is a department or organization of the state, and entitled to Eleventh Amendment immunity, depends upon its functions and characteristics as determined by state law. *Id.*

By extension, the Eleventh Amendment also bars §1983 suits against state officials in their official capacities, because in such a case, the state is considered the real party in interest since an award of damages would be paid by the state. *Id*. However, the Eleventh Amendment does not insulate official capacity defendants from actions seeking prospective injunctive relief. *Id*. Nor does it preclude a damages award against officials in their individual capacities. *Id*.

### C. QUALIFIED IMMUNITY

The law governing whether a government official is entitled to qualified immunity is well-established in the Eleventh Circuit. Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities, so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. Reno*, 325 F.3d 1228, 1232 (11th Cir.2003) (quoting *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). A government official must first prove that he was acting within his discretionary authority. *Id*. at 1233; *Ray v. Foltz*, 370 F.3d 1079, 1081-82 (11th Cir.2004). "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." *Hill v. DeKalb Reg'l Youth Detention Ctr.,* 40 F.3d 1176, 1185 n. 17 (11th Cir.1994). Once the government official has shown he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity: the court must determine whether plaintiff's allegations, if true, establish a constitutional violation, and whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir.2004).

## D. PRISON LITIGATION REFORM ACT

Subsection (e) of 42 U.S.C. § 1997e states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." This statute is intended to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints. *See Harris v. Garner*, 216 F.3d 970, 976-79 (11th Cir.2000) (en banc) (surveying the legislative history of the PLRA). An action barred by § 1997e(e) is barred only during the imprisonment of the plaintiff; therefore, such action should be dismissed without prejudice, allowing the prisoner to bring his claim once released and, presumably, once the litigation cost-benefit balance is restored to normal. *Id*. at 980. Tracking the language of the statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody.

## E. LIMITATIONS ON THE FILING OF LAWSUITS

42 U.S.C. §1983 does not contain a limitations period. As such, the period of limitations to be applied in such actions is the state limitations period applicable to personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276-77 (1985). The state limitations period applicable to personal injury actions in Georgia is set out in O.C.G.A. § 9-3-33. This statute, in pertinent part, provides that "actions for injuries to the person shall be brought within two years after the right of action accrues." *Id*. An actions accrues, thus causing the statute of limitations to begin running, when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *McNair v. Allen,* 515 F.3d 1168 (11th Cir. 2008).

## DISCUSSION

As noted above, in response to plaintiff's allegations, each defendant filed a motion seeking dismissal. With regard to defendant Massee, his motion contains assertions that the Eleventh Amendment bars any claims against the Baldwin County Sheriff's Office, that the plaintiff's complaint fails to state a claim because, in his official capacity, he is not a "person" within the meaning of §1983, that he has not been served in his official capacity, and that the PLRA bars the instant claims because the plaintiff has failed to allege any actual physical injury.

With respect to defendant Giddens, his motion contains arguments averring that the plaintiff's claims are barred by the applicable statute of limitations, that he is entitled to qualified immunity, and that the instant claims against him are barred by the PLRA. From an organizational standpoint, and with the exception of the PLRA issue, the undersigned will address these defenses in turn. Because the PLRA argument appears dispositive, it will be addressed first.

Both defendants contend that plaintiff Huley's claims seeking money damages are barred by provisions of the PLRA. More specifically, the defendants cite to and rely upon the PLRA's prohibition of federal civil claims filed by a prisoner seeking damages for mental or emotional injuries suffered while in custody which do not contain a prior showing of physical injury. Here, and despite the fact that the plaintiff's present incarceration is entirely unrelated to that of the instant claim, the fact remains that he *was* in a jail/prison facility at the time he filed the instant action. Moreover, his federal action complains only of mental and emotional injuries arising during his incarceration in Baldwin County, Georgia. As his alleged injuries are not physical in nature, and because his enumerated demands for relief do not include any request for nominal damages, it appears that his claims, however legitimate sounding, are barred by the PLRA.

Notwithstanding the above conclusion, and in an effort to fully comport with the district court's directive, the undersigned will now proceed to address each of the other arguments proffered by the defendants in support of their motions seeking dismissal. With respect to defendant Massee's Eleventh Amendment argument, he is correct. To the extent that the plaintiff's action seeks to hold the Baldwin County Sheriff's Office liable for his injuries, any such claim is futile in light of the immunity from suit afforded by the Eleventh Amendment. Similarly, claims brought against the defendant in his official capacity are also barred because, in such a posture, the true party in interest is the government.

Furthermore, and with regard to defendant Massee's argument that, in his official capacity, he is not a "person" subject to suit in an action brought pursuant to 42 U.S.C. §1983, he is once again correct. Actions brought pursuant to 42 U.S.C. §1983 require a plaintiff to allege an act, committed by a person acting under color of state law, violated his Constitutional rights. As explained above, official capacity defendants are not persons. Accordingly, any §1983 claims against an official capacity defendant are not permissable.

Defendant Massee's final argument is that plaintiff Huley has failed to effect service upon him in his official capacity. In view of the fact that the instant claims brought against defendant Massee in his official capacity have already been found to be precluded, a detailed analysis of this assertion is unnecessary. Nevertheless, the undersigned notes that the waiver of service of summons executed by defendant Massee does contain the word "individually." While it is not entirely clear why this waiver form contained this designation, and despite the fact that the argument appears to be technically correct, reliance upon such an argument in support of a request for dismissal appears somewhat misplaced.

With respect to defendant Giddens, his first argument is that the plaintiff's claim of false arrest as well as any other claim arising before February 20, 2005 are time barred by the applicable period of limitations. As noted above, the limitation period that applies in this case is the same as Georgia's limitations period applicable to personal injury actions — two (2) years. In support of this argument, defendant Giddens observes that the instant action was filed with the court on February 20, 2007. Thus, according to defendant Giddens, any claims arising before February 20, 2005, including the plaintiff's claim of false arrest, are time barred.

As an initial matter, the undersigned notes that the plaintiff's complaint was **executed and notarized,** on January 23, 2007. As prisoners receive the benefit of the mailbox rule, and because there is no indication that the instant complaint was not submitted for mailing on the date it was executed, January 23, 2007 is the appropriate date to be used in calculating the applicable period of limitations. Accordingly, and because the initial basis for the plaintiff's claims arose on January 28, 2005, some one year, eleven months, and twenty-six days before January 23, 2007, plaintiff's action appears timely filed. Consequently, defendant Giddens' argument on this point is without merit.

Defendant Giddens final argument to be addressed is his assertion that he is entitled to qualified immunity. In order to enjoy qualified immunity, defendant Giddens' actions must have been discretionary in nature and not in violation of any clearly established statutory or constitutional rights of which a reasonable person would have known. To support his assertion of entitlement to qualified immunity, defendant Giddens contends that his arrest of the plaintiff was not malicious but was instead premised upon information received from unidentified law enforcement sources, a subsequent investigation, and at the very least, arguable probable cause.

While the above assertions could prove to be accurate, consideration of the plaintiff's statements regarding the events leading to his arrest and confinement, his explanation to defendant Giddens upon learning the basis for the arrest and incarceration, the defendant's flippant comment in response to plaintiff's explanation, the uncontested evidentiary basis for, and fact of, the plaintiff's ultimate adjudication of not guilty, and the somewhat ambiguous explanations proffered by defendant Giddens in response to plaintiff's claims leads the undersigned to conclude that more factual development would be necessary in order to make a proper determination on the issue of qualified immunity. Nevertheless, and in view of the undersigned's earlier conclusion that this action is precluded on other grounds, no such development is required.

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the defendants' motions seeking dismissal be **GRANTED** and that this action be **DISMISSED**. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 19th day of MARCH, 2010.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE